COURT
OF APPEALS

                                                    EIGHTH
DISTRICT OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

                                                                              )                    No. 
08-01-00338-CV

                                                                              )

IN
THE MATTER OF C.Y.,                                 )                             Appeal from

                                                                              )     

a Juvenile.                                                              )                      County Court at Law

                                                                              )

                                                                              )                 of Midland County, Texas

                                                                              )

                                                                              )                              (TC# 4647)

 

O
P I N I O N

 

In
a trial by jury, C.Y., a juvenile, was adjudicated delinquent for committing
indecency with a child younger than seventeen years of age by sexual
contact.  The trial court placed him on
probation for one year.  We affirm the
adjudication.

FACTUAL AND PROCEDURAL SUMMARY








L.J.,
the complainant, was born on December 5, 1995. 
On February 15, 1999, her mother, Lillie Johnson, left the child at the
home of her babysitter, Pat Livingston, while Johnson was at work.  Livingston and her husband were Appellant=s guardians and he lived in the house
with them.  Appellant referred to
Livingston as AGrandma.@ 
Johnson testified that when she picked up L.J. from the Livingston home
after work, Appellant, L.J., and Mr. Livingston were there.  After Johnson left the home, she and L.J. had
a conversation in the car.  Based upon
that conversation, Johnson took L.J. to a doctor and then called the
police.  On February 17, 1999 and again
on April 20, 2000, L.J. provided videotaped statements which were recorded at
the Children=s
Advocacy Center in Midland.[1]








On
May 30, 2000, the State filed in the juvenile court a petition for delinquency
accusing Appellant, then fifteen years of age, of delinquent conduct by
engaging in sexual contact with a child younger than seventeen years of age.[2]  Thereafter, the State filed a motion to
introduce the videotaped statements and requested that the court make findings
under Article 38.071 of the Texas Code of Criminal Procedure.  Appellant filed a motion to challenge the
competency of the child pursuant to Texas Rule of Evidence 601(a)(2).  

At
a pretrial hearing on its motion, the State sought to introduce the two
videos.  The court reviewed both tapes
and determined that pursuant to Section 8 of Article 38.071, L.J. was
unavailable with regard to the first video because of the time lapse between
the date of the incident in February 1999 and the date of trial in June
2001.  The court explained its ruling: 

The difference
between the two tapes with regard to the obvious age and maturity of the child
is striking, and the Court is of the opinion that, because of that lapse of
considerable time and now the lapse to the possible trial date of June of 2001
from the alleged date of occurrence, which was February the 15th of 1999 -- the
Court is of the opinion that the child meets, in the Court=s mind, a requirement that the Court
determine the child to be unavailable because of that time lapse.  

 

.          .          .

 

I do tend to think
with regard to Tape One the child is unavailable.  I think that the passage of time from an
interview of February the 17th of 1999 is just too extensive for me to come to
any other finding.  

 

The court did
not find the child unavailable as to the second tape.  Defense counsel then objected to the court=s ruling and argued that the court must
make findings in order to determine the unavailability of a child witness:








First of all, I believe
the Court must find that it is trying to protect -- I may actually have that
cite.  Marilyn versus Craig is 497 US
844-846, or 110 Supreme Court at 3163, >the
use of the procedures necessary to protect the welfare of the particular child
witness who seeks to testify, the Court must find that the child witness would
be traumatized by the presence of the Defendant and that the trauma would be
more than just de minimis; that is, more than just
mere nervousness or excitement or reluctance to testify.=  

 

Your Honor, it is
not like this is a brother and sister type situation.  My client=s
grandmother was babysitting this child back in 1998, and this is alleged to
have been a one-time occurrence.  It is
my understanding that when Ms. Johnson found out about the abuse that she took
the child out of the -- out of the home and away from the babysitter, so I don=t believe this child and this young man
have had any contact since that time, and so I don=t
see where there is any trauma to the child, other than, of course, the normal
nervousness of having to testify.

 

The court responded to defense
counsel=s
argument, in relevant part:

 

I am not convinced
that I would be able to make a finding at this point in time with regard to
some of the suggestions that you are pointing out that, well, these children
have been removed since that point in time. 
It is not like a family member where she would be afraid to maybe come
and testify because of maybe the emotional issue of having to identify some
loved one as being the perpetrator, or something of that sort.  As I say, I have not even seen the child
physically, to my knowledge, and have only seen her on these two taped
representations.  

 

But I did definitely
feel that the time lapse certainly bothered me and caused me to feel that,
under that circumstances, I was going to rule that the
child was unavailable under Section 8, so as to permit the State=s introduction of Tape 01 of February
the 17th of 1999.    

 

The judge then
turned to the issue of the admissibility of the tapes under Section 5 of
Article 38.071, addressing each of the twelve requirements.  With regard to Subsection (a)(10), the court commented:








Number ten, this --
this is -- in the Court=s
estimation in the tape that I saw first that related to February the 17th of
1999, the Court found that an age-appropriate indication during the examination
with regard to >We
only talk about things that happened or things that are truthful= -- I forgot exactly how the examiner
put it.  I thought that was appropriate
to the child=s age,
and it was an admonishment that we are here for purposes of only telling the
truth and not make-believe and not make-up type of items.  I found that number ten was satisfied from
the recording.  The entire recording of
February the 17th of 1999 the Court found to be a rather innocent approach to
the subject, and I felt that that admonishment was contained in the questions
of the interviewer and placed in the interview, although I don=t think that they initially -- that
they led off the tape.  I don=t think that they came at the very
beginning of the tape.

 

Following the
ruling on admissibility, defense counsel urged his challenge to L.J.=s
competency.  The judge questioned the
child in chambers[3]
and ruled that she was not competent to testify at trial:   

[T]his child does
not appear to the Court to possess sufficient intellect to relate transactions
with respect to which they are interrogated. 
The child does not give me the confidence that she would understand the
difference between telling the truth and telling a lie in a courtroom setting,
and her immaturity does not give me any confidence that she can be interrogated
in an adversarial, although very delicate, manner.  . . . 
So the court rules that she is not competent to testify at this point in
time.

 

The
trial was conducted on June 11, 2001. 
Appellant pled Anot
true@ to the
allegations in the petition.  The State
offered the February videotape into evidence during the testimony of Christina Hammon, a forensic interviewer at the Children=s Advocacy Center in Midland who had
conducted the interview with L.J.[4]

State:                I
have placed in front of you what I=ve marked as State=s
Exhibit 2.  Are you able to identify
that?

 

Hammon:          Yes, this is the videotape that I made of an interview with
[L.J.].

 

State:                Your Honor, at this time I would like to show the video to
the jury.

 

Defense:           I
object.  They have not laid a proper
predicate as to it being an accurate recording, having -- that the machinery
was working, identification of the parties on the tape.  That=s
the basis of my objection, Your Honor.








State:                Your
Honor, I would be happy to --

 

Court:               At
least ask her if she has had an opportunity to view it since the time it has
left her possession.

 

State:                Have
you had the opportunity to review this video?

 

Hammon:          Yes. 

 

State:                And
who are the actors that are shown on this video?

 

Hammon:          Myself and [L.J.].

 

State:                How
are the videotapes actually made at the Child Advocacy Center?

 

Hammon:          The interview room that [L.J.] and I are in has the camera
on the wall, and then in another office we have a monitoring room set up.  And that monitoring room is, of course,
hooked up to the camera via closed-circuit television, so the interview can be
monitored as it happens there.  And also
the VCRs are in that room, in that monitoring room. 

 

State:                And
is the camera and VCR and all the other equipment
capable of making an accurate recording of the occurrences in that room?

 

Hammon:          Yes.

 

State:                And
were you operating all of this machinery?

 

Hammon:          Yes.

 

State:                And
are you capable and trained in operating that machinery?

 

Hammon:          Yes.

 

State:                Okay.  And you had the opportunity to observe it?        

 

Hammon:          Yes.

 

State:                Have
any alterations been made?

 

Hammon:          No.

 








State:                Is
it an accurate representation of the interview that you did on that day?

 

Hammon:          Yes.

 

State:                Your Honor, at this time I offer State=s Exhibit 2.

(State=s Exhibit No. 2 was offered)

 

Court:               Further
objection?

 

Defense:           No,
sir.

 

Court:               Tape
No. 2 is admitted -- as Exhibit No. 2, excuse me.  

 

At the end of Hammon=s
testimony, defense counsel offered the April videotape into evidence and it was
played for the jury.  The jury ultimately
found that Appellant engaged in delinquent conduct by committing indecency with
a child by sexual contact.  

Appellant
brings three issues for review.  In Point of Error No. One, he argues the trial court erred
in admitting the complainant=s
videotaped testimony.  In
Point of Error No. Two, he claims the trial court erred in finding that
the complainant was unavailable. 
Finally, he brings a legal sufficiency challenge in his third point of
error.  We address his second point
first.

UNAVAILABILITY OF CHILD WITNESS








Appellant
contends the trial judge erred in finding that the complainant was unavailable
to testify.  See Tex.Code Crim.Proc.Ann.
art. 38.071, '
1 (Vernon Pamph. 2002).[5]  A trial court=s
ruling on a finding of unavailability is reviewed for an abuse of
discretion.  See Marx v. State,
953 S.W.2d 321 (Tex.App.--Austin 1997), citing
Act of July 20, 1987, 70th Leg., 2d C.S., ch. 55, ' 2, 1987 Tex.Gen.Laws 180, 185 (Tex.Code Crim.Proc.Ann.
art. 38.071)(stating preference for affording Asufficient
discretion@ to trial
courts applying statute), aff=d, 987 S.W.2d 577 (Tex.Crim.App. 1999), cert. denied, 528 U.S. 1034,
120 S.Ct. 574, 145 L.Ed.2d 436 (1999).[6]


Section
8 of Article 38.071 requires that in making a determination of unavailability,
the court shall consider relevant factors, including:

the
relationship of the defendant to the child, the character and duration of the
alleged offense, the age, maturity, and emotional stability of the child, and
the time elapsed since the alleged offense, and whether the child is more
likely than not to be unavailable to testify because:

 

(1) of emotional or physical causes, including the confrontation
with the defendant; or

 

(2) the child would suffer undue psychological or physical harm
through his involvement at the hearing or proceeding.

 








Tex.Code Crim.Proc.Ann.
art. 38.071, '
8(a).  The trial court conducted a
pretrial hearing and ruled that L.J. was unavailable only with regard to the
first videotape.  This finding was based
on his belief that the amount of time between the alleged offense in February
1999 and the anticipated trial date of June 2001 was too extensive.  The court did not hear testimony on any of
the relevant factors set out in Section 8. 
No evidence was presented on the relationship between the defendant and
the child, the maturity and stability of the child, or whether the child would
be unavailable to testify because of potential psychological or physical
harm.  L.J. was not questioned prior to
the determination.  When defense counsel
insisted that the trial court was required to inquire into these factors, the
court replied that he was not sure whether, at that point in time, he could
make such a determination.  However,
there was no further discussion either at the pretrial hearing or during the
trial itself as to whether unavailability was properly determined.  

The
trial court was aware of L.J.=s
age and had some idea of the nature and duration of the alleged offense, but
those factors taken together with the court=s
determination that there was a long period of time between the alleged offense
and the trial date did not provide a sufficient basis upon which to find that
L.J. was unavailable under Article 38.071. 
There was no testimony that the child would suffer harm if she were
forced to testify.[7]  We thus conclude that the trial court abused
its discretion in finding the child unavailable.  








We
turn now to a harm analysis.  See Tex.R.App.P. 44.2(a).  The denial
of a defendant=s right
to confront the complainant in violation of the Confrontation Clause is
constitutional error.  Shelby
v. State, 819 S.W.2d 544, 547 (Tex.Crim.App.
1991).  Where the Confrontation
Clause is implicated, the harm analysis is conducted pursuant to Texas Rule of
Appellate Procedure 44.2(a).  We must
reverse the judgment unless we find beyond a reasonable doubt that the error
did not contribute to the adjudication.  Tex.R.App.P. 44.2(a).  While the trial court=s
finding of unavailability led to the improper admission of the first videotape,
the record reflects that the defense offered the second videotape into
evidence.  L.J. made similar accusations
against Appellant in both videos; indeed, the defense acknowledged these
accusations but then utilized inconsistencies in her statements to attack her
credibility.  Improper admission of
evidence is not reversible error if the same or similar evidence is admitted
without objection at another point in the trial.  Broderick v. State, 35 S.W.3d 67, 74 (Tex.App.--Texarkana 2000, pet. ref=d),
citing Mayes v. State, 816 S.W.2d 79, 88 (Tex.Crim.App.
1991).  Appellant does not complain on
appeal that the trial court=s
error in admitting the first videotape forced him to introduce the second
videotape in order to demonstrate the child=s
lack of credibility.  Consequently, we
find beyond a reasonable doubt that the erroneous admission of the February
videotape did not contribute to the jury=s
verdict.  Point of
Error No. Two is overruled.

ADMISSION OF THE VIDEOTAPE








In Point of Error No. One, Appellant claims that the
February videotape did not satisfy Sections 5(a)(10)
and 5(a)(11) of Article 38.071 because there was insufficient evidence to show
that L.J. knew the difference between a truth and a lie.  We find that these claims are without
merit.  As to his complaints regarding
Section 5(a)(10), Appellant has failed to preserve
error.  Section 5(a)(10)
permits the admission of a recording of an oral statement of a child made
before a complaint has been filed or an indictment returned if Abefore giving his testimony, the child
was placed under oath or was otherwise admonished in a manner appropriate to
the child=s age and
maturity to testify truthfully.@  Tex.Code Crim.Proc.Ann.
art. 38.071, '
5(a)(10). 
Appellant failed to object to the admissibility of the videotape on the
basis of Section 5(a)(10) either at the pretrial
hearing or at trial.  An objection
stating one legal basis may not be used to support an appeal on a different
legal basis.  Fultz v. State, 940
S.W.2d 758, 760 (Tex.App.--Texarkana 1997, pet. ref=d), citing Rezac
v. State, 782 S.W.2d 869, 870 (Tex.Crim.App.
1990).  The objection must draw the court=s attention to the particular
complaint raised on appeal.  Id., citing
Little v. State, 758 S.W.2d 551, 564 (Tex.Crim.App. 1988), cert. denied, 488 U.S. 934, 109
S.Ct. 328, 102 L.Ed.2d 346 (1988).  When the court ruled at the pretrial hearing
that the videotape comported with the requirements of Subsection 5(a)(10), Appellant did not object.  When the tape was offered into evidence at
trial, the defense did not object that the video lacked an oath or an
admonishment to the child to testify truthfully.  Instead, his objection went to the lack of a
proper predicate as to the accuracy of the recording and whether the parties
were properly identified.  Defense
counsel further stated, AThat=s
the basis of my objection.@  When the court asked, AFurther
objection?,@
defense counsel replied, ANo,
sir.@

Appellant
next complains that the videotape did not comply with Section 5(a)(11),
which  provides that a recording is
admissible if  Athe
court finds from the recording or through an in camera








 examination of the
child that the child was competent to testify at the time that the recording
was made.@  Tex.Code Crim.Proc.Ann. art. 38.071, ' 
5(a)(11). 
The court stated on the record that he believed the child was competent
to testify at the time the recording was made. 
Point of Error No. One is overruled.

LEGAL SUFFICIENCY

In Point of Error No. Three, Appellant challenges the legal
sufficiency of the evidence supporting the finding of delinquency.  Specifically, he contends that the evidence
is legally insufficient because L.J. did not make an in-person
identification either at or before trial as required by Section 9 of Article
38.071.[8]  He also seems to argue that neither the child
nor any other person at trial identified him as the perpetrator of the
offense.  We disagree.

In
determining the legal sufficiency of the evidence used to support a criminal
conviction, we view the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560, 573 (1979); Dewberry v. State, 4 S.W.3d 735,
740 (Tex.Crim.App. 1999); Lyon v. State, 885
S.W.2d 506, 516 (Tex.App.--El Paso 1994, pet. ref=d).  We must consider all the evidence the jury
was permitted to consider, whether proper or improper, in determining the
sufficiency of the evidence to support a conviction.  See Johnson v. State, 871 S.W.2d 183, 186 (Tex.Crim.App.
1993).  We do not resolve conflicts of
fact or assign credibility to witnesses, as it is the function of the trier of fact to accept or reject any, part, or all of any
witness=s
testimony.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Lucero v. State, 915 S.W.2d
612, 614 (Tex.App.--El Paso 1996, pet. ref=d).








The
identity of a perpetrator may be proven by either direct or circumstantial
evidence.  See Couchman
v. State, 3 S.W.3d 155, 162 (Tex.App.--Fort Worth
1999, pet. ref=d), citing
Earls v. State, 707 S.W.2d 82, 85 (Tex.Crim.App.
1986).  The absence of an
in-court identification does not render the evidence insufficient on the
issue of identity.  See id.; Meeks
v. State, 897 S.W.2d 950, 954-55 (Tex.App.--Fort
Worth 1995, no pet.).  The fact that L.J.
did not make an in-person identification does not
preclude us from reviewing the entirety of the record to determine whether the
evidence of identity was legally sufficient. 
We may review any evidence submitted to the jury, whether properly or
improperly admitted. 

In
Couchman, a defendant charged with indecency
with a child challenged the out-of-court statements made by the child victim as
legally insufficient on the issue of identity. 
Couchman, 3 S.W.3d at
162.  He claimed that he was not
the same ATony@ identified in the out-of-court
statements made by the child and that the child never identified him as the
perpetrator in court.  Id.  The court found the evidence sufficient based
on (1) the child=s
testimony that ATony@ had touched her in an area where it Awas not okay to touch@; (2) a relative=s
testimony that ATony@ was the only person the child knew
with that name; and (3) an in-court identification of ATony@ by that relative.  Id. at 162-63.

Here,
both of the videotapes revealed that L.J. referred to Appellant by his first
name.  In both tapes, she said that A[C.Y.] wiggled my tee-tee.@ 
L.J.=s
mother, testified that Appellant was at the house when she picked up the child
on the date of the offense.  She also
identified Appellant in court and testified that L.J. did not know any other person
with Appellant=s first
name.  This evidence was sufficient for a
rational juror to conclude that Appellant was the perpetrator of this
offense.  Point of
Error No. Three is overruled.  We
affirm the judgment of the trial court.

 








 

 

August 15, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]  The relevant
portions of the February 1999 tape included the following testimony by L.J.:

 

                Interviewer:           Ummm,
[L.J.], are there parts of the body people aren=t supposed to touch?

 

L.J.:                         uuu
[C.Y.]

 

Interviewer:           uuu
[C.Y.]?  uuuh [L.J.], who=s
[C.Y.]?

 

L.J.:                         [C.Y.] (inaudible)

 

Hammon:               [C.Y.]
did what?

 

L.J.:                         [C.Y.] wiggled my
tee-tee.

 

Interviewer:           [C.Y.] wiggled your tee-tee?

 

L.J.:                         mm mmm

 

Interviewer:           mm mm is
[C.Y.] a boy or a grown up?

 

Interviewer:           Oh, well [L.J.], where were you when
[C.Y.] wiggled your tee-tee?

 

L.J.:                         Grandma=s Pat.

 

Interviewer:           At Grandma Pat=s? And um when [C.Y.] wiggled your tee-tee, what room
were you in?

 

L.J.:                         In Misty=s room
watching cartoons.

 

Interviewer:           In Misty=s room watching cartoons?

 

L.J.:                         On the bed.

 

Interviewer:           On the bed?

 

L.J.:                         uh
uh





[2]  The petition
alleged the following:

 

On or about
the 15th day of February, 1999, in the County of Midland, State of Texas . . .
[C.Y.] did then and there unlawfully, intentionally and knowingly engage in
sexual contact with [L.J.], a child younger than seventeen (17) years of age,
by touching the genitals of [L.J.], with the intent to arouse or gratify the
sexual desire of said [C.Y.], contrary to Section 21.11, Texas Penal Code.





[3]  There is no reporter=s record of the discussion between the judge and
L.J.    





[4]  Hammon also videotaped the
April 2000 interview with L.J. which was later offered into evidence by the
defense.  L.J. also stated in this
videotape that A[C.Y.] wiggled my tee-tee.@  Defense
counsel acknowledged during her closing argument that the child made this
statement in both tapes.   However, she
argued to the jury that there were a number of inconsistencies in the child=s testimony, including whether her clothes were on or
off and whether there was another person in the room when the incident
occurred.





[5]  Sec. 1.  This article applies only to a hearing or
proceeding in which the court determines that a child younger than 13 years of
age would be unavailable to testify in the presence of the defendant about an
offense defined by any of the following sections of the Penal Code:  

 

.         
.          .

 

(5) 
Section 21.11 (Indecency with a Child).





[6]  There is no
case directly holding that a finding of unavailability under Article 38.071 is  reviewed for abuse
of discretion.  In Marx v. State,
the appellate court addressed the issue of whether the State failed to prove
the child witness was Aunavailable@ as
required by Section 1 of Article 38.071 before permitting the child to give
testimony by closed-circuit television.  Marx,
953 S.W.2d at 327. 
The court observed that in Gonzales v. State, the Texas Court of
Criminal Appeals noted that a statute was not the only basis for permitting
closed-circuit testimony of a child victim in Texas.  Id. 
To justify the use of closed-circuit testimony, the trial court must
determine that the procedure is necessary by hearing evidence and finding:  (1) the procedure is necessary to protect the
welfare of the particular child witness who seeks to testify; (2) the child
witness would be traumatized, not by the courtroom generally, but by the
presence of the defendant; and (3) the emotional distress suffered by the child
witness in the presence of the defendant is not de minimis,
that is, more than mere nervousness or reluctance to testify.  Id. 
The court concluded that this finding of necessity supplants the
requirement of unavailability described in Section 8 of Article 38.071.  Id. 
As long as the record supports a finding of necessity, the trial court
did not err by allowing testimony by closed-circuit television merely because
the children involved did not meet the other requirements of Article
38.071.  Id.  The court then reviewed the trial court=s ruling on necessity for an abuse of discretion.  Id.; see also Bousquet v. State, 47 S.W.3d 131, 136 (Tex.App.--Houston (1st Dist.) 2001, pet. ref=d)(stating that a finding of
necessity equally satisfies the test to determine unavailability).  Thus, if a finding of necessity equally
satisfies a finding of unavailability, an abuse of discretion standard should
apply to both upon appellate review. 
Moreover, a trial court=s decision to admit or exclude evidence is reviewed
under an abuse of discretion standard.  Willover
v. State, 70 S.W.3d 841, 845 (Tex.Crim.App.
2002).





[7]  In Bousquet v. State, the defendant challenged
the trial court=s finding of unavailability of a child witness.  Bousquet v. State, 47 S.W.3d 131 (Tex.App.--Houston
[1st Dist.] 2001, pet. ref=d).  The State presented testimony from the child=s uncle relating to the child=s psychological state of mind.  The uncle testified that if the child were to
return to Texas from Colorado to testify it would have a highly detrimental
impact on his emotional progress and that the child did not want to return
because he feared appellant.  Id. at 135.  A
caseworker also testified that the child feared appellant.  Id. 
Based on this evidence, the trial court considered two factors:  (1) the relationship between the child and
the defendant; and (2) the emotional stability of the child.  Id. at 135-36.  The court found that the child was
unavailable.  Id.  On appeal, the court held that the trial
court abused its discretion when the evidence showed that the child was twelve
years old at the time of trial, the alleged sexual assault consisted of a
single touching occurring over three years before the trial, and the absence of
testimony from a child-care expert regarding the child=s psychological state of mind at or near the time of
the trial.  Id.
at 136.  The court also expressed
doubts about the child=s fear of appellant based on evidence that the child
was at the assistant district attorney=s office
in Houston during the proceedings and that this provided the judge with an
opportunity to question the child directly about his reluctance to testify, but
did failed to do so.  Id.  Here, there was even less evidence presented
to support a finding of unavailability.





[8]  Section 9 of
Article 38.071 states: 

 

If the court finds the testimony taken under Section 2
or 5 of this article is admissible into evidence or if the court orders the
testimony to be taken under Section 3 or 4 of this article and if the identity
of the perpetrator is a contested issue, the child additionally must make an
in-person identification of the defendant either at or before the hearing or
proceeding.

 

Tex.Code Crim.Proc.Ann. art. 38.071, '
9.